## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN and DIANE FITZPATRICK and JOHN MCKENZIE, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>UPONOR, INC.,<br><br>      Defendant. | Court File No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs John and Diane Fitzpatrick and John McKenzie ("Plaintiffs"), individually and on behalf themselves and all others similarly situated (the "Putative Class"), allege the following against Uponor, Inc. ("Uponor") based, where applicable, on personal knowledge, information and belief, and the investigation of counsel and its experts.

## I. INTRODUCTION

1. This case involves the Uponor AquaPEX piping systems ("Uponor PEX"), which includes plastic piping, reinforcement rings and fittings which were designed, manufactured, and sold by Uponor. Uponor PEX piping is a plastic potable water supply piping product manufactured in three colors—Red, White, and Blue—all of which are the subject of this lawsuit (herein "Uponor PEX Pipe" or "Class Pipe").

2. Uponor PEX Pipe is used in residential properties for a number of applications, including potable water distribution, fire protection systems, and radiant floor and baseboard heating.

3.      On information and belief, Uponor has sold millions of feet of Uponor PEX Pipe between 2010 and 2025 (the "Class Period"), which was then installed in hundreds of thousands of homes throughout the United States.

4.      While Uponor claims that the Class Pipe will last 50 to 100 years—leading customers to expect that their piping systems will last the equivalent of a lifetime—Uponor PEX Pipe is inherently defective and will fail, crack, and leak well before the end of its useful life. The design and/or manufacture process used by Uponor results in catastrophic oxidation of the Class Pipe, leading the Class Pipe to leak within the walls of Plaintiffs' and Class Members' homes.

5.      Uponor has long been aware of the process of oxidation and its root causes but intentionally failed to disclose the defects to consumers (including Plaintiffs and Class Members), distributors, contractors, installers, or building officials.

6.      This oxidation defect has caused Uponor PEX Pipe to fail nationwide, on a widespread basis, with devastating effects on homeowners. And because the defect is inherent, continuing, progressive, and cannot be reversed or corrected, such failures will continue to occur at different parts of the home at different times until the pipes are completely replaced.

7.      Typically, the owner of a home equipped with Uponor PEX Pipe will experience a pipe failure in one run of piping that causes leaking and water damage. The owner will then remediate the issue (at their own expense), only to have another run of the piping fail.

8.     The only way to truly prevent damage—or prevent further damage—to the home is to remove and replace all the Uponor PEX Pipe in the home. This removal, replacement, and remediation process cost Plaintiffs and Putative Class Members substantial amounts of money.

9.     The Class Pipe contained design and/or manufacturing defects at the time that the pipe was installed in Plaintiffs' and Putative Class Members' homes. However, at the time that Plaintiffs and Class Members purchased homes fitted with the Class Pipe, they reasonably expected that Class Pipe would reliably function as water supply pipe and had no way of knowing that it contained defects that would cause the pipe to crack, leak and fail prematurely.

10.     Had Uponor disclosed the defects in their piping system, Plaintiffs and Putative Class Members who purchased homes fitted with the Class Pipe either would not have purchased their home, would have paid less for their home, or would have required that the pipe be removed and replaced as a condition of purchase.

11.     Similarly, had Uponor disclosed the defect in their piping system, Plaintiffs and Putative Class Members who purchased the Class Pipe to repipe their homes would not have done so if Uponor had not concealed material information about the defects.

12.     Plaintiffs, on behalf of themselves and other similarly situated individuals who also paid for the Class Pipe or were otherwise injured by the defect, seek to recover damages from Uponor based on applicable state consumer protection laws and unlawful trade practices statutes, fraud by concealment, unjust enrichment, negligence, and strict liability.

3

## II.    PARTIES

**A.    Plaintiffs**

**John and Diane Fitzpatrick**

13.    Plaintiffs John and Diane Fitzpatrick ("Plaintiffs Fitzpatrick") own a home, located at 14478 Southeast Faris Street in Happy Valley, Oregon 97086.

14.    Uponor PEX Pipe was installed in Plaintiffs Fitzpatrick's home when it was initially constructed in 2014.

15.    Plaintiffs Fitzpatrick purchased their home in 2014 from Cascade West Development, Inc ("Cascade").

16.    At the time Plaintiffs Fitzpatrick purchased their home, they had no knowledge of what pipe was used for the potable water system.

17.    Plaintiffs Fitzpatrick were not provided with any information from Cascade regarding the potable water pipe used in their home.

18.    Plaintiffs Fitzpatrick did not learn that Uponor PEX Pipe was installed in their home until after they experienced their first leak in 2025.

19.    On or about January 23, 2025, Plaintiffs Fitzpatrick first observed a leak and running water in the crawlspace beneath their home.

20.    On or about January 24, 2025, Plaintiffs Fitzpatrick contacted Royal Flush Plumbing Co. to investigate the running water in the crawlspace. The plumber identified that the leak in the crawlspace was from a cracked Uponor PEX Pipe.

21.    At the time the leak was first observed, approximately fifty percent of the crawlspace was saturated with water from the leak.

4

22.     Other areas of Plaintiffs Fitzpatrick's home sustained significant water damage from flooding caused by the leak in the crawlspace, including the carpeted flooring, baseboards, wall insulation, and drywall in the primary bedroom closet as well as the insulation and drywall in the garage. The furnace located in the garage was also rendered unusable for over five months by the flooding, during which time their home was without heat except for one gas fireplace.

23.     The water heater had to be moved several feet from the wall and was temporarily replumbed until remediation was complete and drywall finished.

24.     Additionally, mold developed in Plaintiffs Fitzpatrick's house as a result of the water damage.

25.     On or about March 2, 2025, Plaintiffs Fitzpatrick collaborated with Carley Consoli, a Project Manager at Narrow Path Contractors, LLC, to identify the scope of the work that needed to be completed at their home because of the water damage caused by the leaking Uponor PEX Pipe.

26.     Plaintiffs Fitzpatrick's home required extensive remediation including mold abatement, removal and replacement of insulation and drywall, removal and replacement of the entire potable water system and all Uponor PEX pipe including the entire Uponor system, as well as removal and replacement of carpeted flooring, carpet pads, baseboards, re-installation of HVAC units, re-installation damaged cabinets, repainting, caulking, and electrical inspections.

27.     On or about June 19, 2025, Plaintiffs Fitzpatrick contracted with Robert Shanks at Narrow Path Contractors, LLC, to complete necessary repair work.

5

28. The out of pocket expenses for Plaintiffs Fitzpatrick included: $17,473.65 to Cornel Plumbing Heating and Air; $3,625 for drywall replacement; $450 to Royal Plumbing for the first Uponor PEX pipe leak; $785 to Royal Plumbing for an emergency call the next day for the second and third Uponor PEX pipe leaks; $76.99 for paint; $1,500 for removal of the furnace; for total out of pocket expenses of $24,091.42, which sum does not include property damage paid for by their insurance company.

29. Plaintiffs Fitzpatrick's out of pocket costs totaled approximately $24,091.42 for repairs and restoration resulting from the defective Class Pipe.

30. Plaintiffs Fitzpatrick have attempted to retain all the failed Class Pipe and have taken photographs documenting the leak and resulting property damage.

31. At the time that Plaintiffs Fitzpatrick purchased their home from Cascade, they were unaware of any Uponor warranty, nor were they aware of Uponor's warranty claims portal on its website. Plaintiffs Fitzpatrick remained unaware of any Uponor warranty or Uponor's warranty claims portal until this information was revealed by their counsel in this action.

32. Plaintiffs Fitzpatrick were never provided with a copy of any warranty relating to the Uponor pipe installed in their home from Uponor, Cascade, or any other third party.

33. Plaintiffs Fitzpatrick had no opportunity to review any Uponor warranty before the pipe was installed.

34. Plaintiffs Fitzpatrick have had no contact with Uponor.

35. Plaintiffs Fitzpatrick were unaware of any arbitration provision involving the Class Pipe and never agreed or assented to such provision.

36. As such, Plaintiffs Fitzpatrick object to this matter proceeding to arbitration in Minnesota. Instead, Plaintiffs Fitzpatrick desire that this matter procced as a class action.

37. Plaintiffs Fitzpatrick have never submitted a warranty claim to Uponor for the leak in the Class Pipe installed in their home or for the cost of removing and replacing the leaking Class Pipe, never opened a warranty claim using the warranty claims portal on Uponor's website, and never invoked the terms of the warranty.

38. Uponor has no warranty under Plaintiffs Fitzpatrick's name.

39. Further, Plaintiffs Fitzpatrick have never reviewed Uponor's Professional Plumbing Installation Guide. Plaintiffs Fitzpatrick are not professional plumbers and were unaware that such an installation guide existed.

40. Had Uponor disclosed that the Class Pipe is defective, Plaintiffs Fitzpatrick would not have purchased their home, would have paid less for their home, or would have required that the pipe be removed and replaced as a condition of purchase.

**John McKenzie**

41. Plaintiff John McKenzie ("Plaintiff McKenzie") owns a home located at 347 Konos Lane in Morton, Washington 98356.

42. Plaintiff McKenzie's home was originally built in 1960.

43. In 2019, Plaintiff McKenzie completed a full remodel of the home that included a complete repiping of his potable water system with the Class Pipe.

7

44.     The Uponor PEX Pipe used in Plaintiff McKenzie's home included ½-inch and ¾-inch diameter piping.

45.     At the time the complete repiping of Plaintiff McKenzie's potable water system was completed, he had no knowledge regarding what pipe was used.

46.     Plaintiff McKenzie did not learn that Uponor PEX Pipe was used to repipe his home until after he experienced his first leak.

47.     On or around June 16, 2025, a leak originated in the ½-inch diameter Class Pipe under Plaintiff McKenzie's kitchen sink.

48.     When the leak occurred, a 20-foot by 20-foot area surrounding the kitchen was saturated by leaking water, including all insulation, subflooring, girders, and main beams.

49.     After the leak was discovered, Plaintiff McKenzie observed that the Class Pipe was discolored and significantly faded.

50.     At the time the Class Pipe was installed in his house, Plaintiff McKenzie was unaware of any Uponor warranty, nor was he aware of Uponor's warranty claims portal on its website.

51.     Plaintiff McKenzie was never provided with a copy of any warranty relating to the Uponor pipe installed in his home from Uponor or any other third party.

52.     Plaintiff McKenzie had no opportunity to review any Uponor warranty before the pipe was installed.

53.     Plaintiff McKenzie has had no contact with Uponor.

54. Plaintiff McKenzie was unaware of any arbitration provision involving the Class Pipe and never agreed or assented to such provision.

55. As such, Plaintiff McKenzie objects to this matter proceeding to arbitration in Minnesota. Instead, Plaintiff McKenzie desires that this matter procced as a class action.

56. Plaintiff McKenzie has never submitted a warranty claim to Uponor for the leak in the Class Pipe installed in his home or for the cost of removing and replacing the leaking Class Pipe, never opened a warranty claim using the warranty claims portal on Uponor's website, and never invoked the terms of the warranty.

57. Uponor has no warranty under Plaintiff McKenzie's name.

58. Further, Plaintiff McKenzie has never reviewed Uponor's Professional Plumbing Installation Guide. Plaintiff McKenzie is not a professional plumber and was unaware that such an installation guide existed.

59. Had Uponor disclosed that the Class Pipe is defective, Plaintiff McKenzie would not have purchased or installed the Class Pipe in his home.

**B.    Defendant**

60. Defendant Uponor, Inc. ("Defendant" or "Uponor") is an Illinois corporation with its principal place of business located at 5925 148th Street West, Apple Valley, Minnesota 55124. At all relevant times herein, Uponor designed, manufactured, marketed/advertised, sold and/or distributed Uponor PEX Pipe for use in residential water plumbing systems in Minnesota and throughout the United States, both directly and indirectly, to Plaintiffs and Putative Class Members by and through their employees, agents, including distributors who in turn sold to developers, contractors and plumbing

9

installers of the Class Pipe, who in turn sold the pipe to Plaintiffs and all Putative Class Members.

### III.    JURISDICTION AND VENUE

61.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Putative Class Member is of diverse citizenship from one Defendant, there are more than 100 Putative Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

62.    This Court has personal jurisdiction over Defendant Uponor because the company maintains its principal place of business in Apple Valley, Minnesota, regularly conducts business in Minnesota, and has sufficient minimum contacts with Minnesota.

63.    Venue is proper in this District under 28 U.S.C. § 1391 because 1) Uponor resides in the District, 2) a substantial part of the events or omissions which give rise to the claims occurred in or emanated from this District,  3) Defendant has caused harm to Putative Class Members residing in this District, and 4) Uponor conducts substantial business, including through numerous distributors, and marketed, advertised and sold Class Pipe in this District.

### IV.    FACTUAL ALLEGATIONS

**A.    Uponor PEX Pipe**

64.    Uponor PEX Pipe is a plastic potable water supply piping product designed for use in potable water supply applications for single-family homes, townhomes, apartments, condominiums, and other building types.

65. The Class Pipe is made of cross-linked polyethylene, or "PEX," which is an alternative to polyvinyl chloride ("PVC") piping or copper tubing in residential water systems. The "PE" refers to the polyethylene raw material used to make the PEX pipe, and the "X" refers to cross-linking the polyethylene across the molecular chain.

66. The Red, White, and Blue Uponor PEX Pipe was manufactured from approximately 2010 to 2021. On information and belief, Uponor stopped manufacturing and discontinued the Red and Blue Uponor PEX Pipe in 2021.

67. The three different colors were intended to ease the identification of piping during installation as Red Uponor PEX Pipe is intended to be used for hot water while Blue Uponor PEX Pipe is intended to be used for cold water. White Uponor PEX Pipe is intended to be used for both hot and cold water.

68. All Uponor PEX Pipe—whether Red, White, or Blue—uses the identical formula and extrusion process. The only difference in manufacturing is that the Red and Blue Uponor PEX Pipe have a non-PEX coating applied to provide color.

69. White, Red, and Blue Uponor PEX Pipe are functionally identical and fully interchangeable.

70. The Uponor PEX piping is used in residential properties for, among other applications:

      a.     Potable hot and cold water distribution;

      b.     Hot water circulation lines;

      c.     Fire protection systems; and

      d.     Closed-loop hydronic radiant heating (radiant floor and baseboard).

11

71.    The overarching defect in the Uponor PEX Pipe is caused by oxidative degradation in the pipe.

**B.    The Uponor PEX Pipe is Defective**

72.    Polyethylene, the raw material used to make Uponor PEX Pipe, is vulnerable to oxidation. Oxidation occurs when oxygen combines chemically with the Uponor PEX Pipe, causing the Uponor PEX Pipe to break down and degrade. This leads to brittleness and loss of material properties including strength and flexibility.

73.    During the oxidation process, free radicals—molecules that have an unpaired electron—attack the stable polyethylene molecules in an effort to find a pair for its lone electron. Because they contain an unpaired electron, free radicals are highly reactive and unstable. Free radicals attempt to regain stability by pairing with polyethylene molecules, which damages the polyethylene molecule—creating a new free radical—and breaks the polymer chain. This initiates a chain reaction, changing the properties of the polyethylene and leading to degradation of the material.

74.    In an effort to prevent premature degradation due to oxidation, Uponor blends antioxidant additives into the polyethylene during production. Antioxidants are molecules containing a number of unpaired elections which can "donate" electrons to free radicals in order to stabilize them without become unstable themselves. The antioxidant additives are intended to pair with free radicals and protect the polymer chains.

75.    However, the Uponor method of pipe production fails to uniformly mix the antioxidants with the polyethene. As a result, some areas of the polymer have less

antioxidant protection. These less-protected areas are susceptible to and lead to oxidation of the pipe.

76. Uponor uses the Engel Method of cross-linking the polyethylene, a hot cross-linking process. Specifically, the polyethylene used to manufacture the Uponor PEX Pipe is exposed to high temperatures and oxygen during the manufacturing process.

77. The Engel Method is intended to provide more precise control over the degree, consistency, and uniformity of cross-linking. However, the high heat and reactive chemistry during extrusion of the Uponor PEX Pipe consumes antioxidants prematurely. This process subjects the polymer to high heat, causing the polyethylene to react with oxygen and—in the absence of the already consumed antioxidants—creating oxidized polyethylene.

78. The oxidized polyethylene surface no longer resembles polyethylene. It has different physical and chemical properties than polyethylene, including a different surface tension and a different density than polyethylene.

79. The oxidized polyethylene begins to shrink and develop surface imperfections. Those imperfections—or microcracks—result in stress concentrations and form cracks that ultimately propagate through the wall of a pipe.

80. This condition causes the Uponor PEX Pipe to prematurely age through introduction of oxygen into the molecular structure. Once initiated, this process of oxidative degradation is significantly accelerated by exposure to normal hot water temperatures and air, which embrittles the pipe causing it to lose mechanical properties and crack.

81. The common failure modality in Uponor PEX Pipe is caused by oxidative embrittlement and degradation of the inside surface of the Uponor PEX Pipe because of poor distribution and extraction of protective antioxidants resulting in material degradation and oxidation of the inside wall of the pipe.

82. Antioxidants protect the pipe from oxidation by scavenging free radicals. Once the antioxidants are depleted, the surface of the pipe progressively undergoes oxidative embrittlement.

83. Because of the oxidative degradation and embrittlement, the Uponor PEX Pipe is unable to withstand the strain of the expansion process specified in Uponor's fitting installation design system.

84. The Uponor PEX Pipe fails outside-in, adjacent to the compression ring of the expansion fitting.

85. The surface defects transform over time into incipient cracks, which then propagate by normal use of the potable water system.

86. Because Uponor uses the Engel Method for all Uponor PEX Pipe, the Class Pipe is uniformly defective when it leaves the manufacturing plant.

### 1. Flame Treatment for Red and Blue Pipe Creates Additional Defects

87. The oxidative degradation in the Uponor PEX Pipe is compounded in the Red and Blue Pipe. With the Red and Blue Pipe, Uponor applies a lacquered coating to provide color over the PEX layer of pipe. To improve the adherence of the lacquered coating, the Red and Blue Pipe is run through a furnace at high temperatures.

88.     As a result of subjecting the pipe surface to the flame treatment and high temperatures, the outside surface of the Class Pipe prematurely becomes brittle and develops microcracks in the exterior wall of the pipe.

89.     The embrittlement and microcracks cause damage to the pipe. Further, the surface underneath the brittle coating is also brittle and experiences incipient cracks.

90.     The cracks continue to grow and spread over time, progressively propagating through the wall of the pipe, causing leaks and resulting property damage.

91.     Uponor's lacquer coating process was discontinued in 2021, at which time Uponor ceased the manufacture and sale of Red and Blue PEX Pipe.

**2.      The Fitting Installation Design System Causes Further Degradation of the Defective Pipe**

92.     The oxidative degradation defect is further exacerbated by the fitting installation design system. The Uponor installation design system requires that the inside diameter of the Class Pipe be expanded while it is cold (cold-expanded) and stretched with a tool in order to insert the fittings.

93.     When the Class Pipe retracts over the fittings, the fittings remain larger than the inside diameter of the Class Pipe, and therefore, the Class Pipe does not return to its original size.

94.     This creates stress concentration at the edge of the reinforcement ring that is installed over the fittings rendering those parts of the pipes even more vulnerable. Years after installation, this stress leads to through-wall cracks in the pipe just outside the reinforcement rings and causes leaks and resulting property damage.

95.     Some of the Uponor PEX Pipe at Plaintiffs' homes failed in this fashion just beyond the fitting as the initial location of the leaks.

96.     Because Uponor utilizes a defective manufacturing and/or design process for its pipe, latent defects are manufactured into all Uponor PEX Pipe and were present at the time the piping left the manufacturing line.

97.     These defects lead to leaks and resulting property damage, and present serious health and safety risks including mold, bacteria, dropped ceilings due to water absorption and damage to building foundations and footings, not to mention damage to other personal properties in the home and significant disruption of their lives while trying to remediate these issues.

98.     Plaintiffs' and the Class Members' Uponor PEX Pipe have the above-described built-in defects that are not caused by poor installation practices or by normal use of the Uponor PEX Pipe by the owner of the property. Even if Uponor's Installation Guide is followed completely, the built-in defects in Class Pipe are such that the risk of the defects manifesting would not be diminished.

**C.    The "Signature Leaks" and Associated Property Damage**

99.     The Uponor PEX Pipe suffers from defects that manifest as "signature leaks" inherent to the pipe due to its design and manufacturing process and cannot be caused by installation practices. The two primary "signature leaks" are leaks that develop adjacent to the reinforcement ring and through-wall leaks in the body of the pipe.

100.    Images 1 through 4, below, show the "signature leak" that can develop in the Class Pipe adjacent to the reinforcement ring that attaches over a fitting joint.  These leaks

16

are associated with the Uponor installation design system which exacerbated the inherent defects in the Class Pipe.



Uponor reinforcement ring

Image 1 – Representative Uponor PEX Red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting



Image 2 – Representative Uponor PEX White pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting



Image 3 – Representative Uponor PEX red pipe leak just outside the Uponor ProPEX reinforcement ring over the fitting



Image 4 – Representative Uponor PEX blue pipe with leak just outside the Uponor ProPEX reinforcement ring over the fitting

101.    Images 5 through 7, below show longitudinal through-wall cracking in the body of pipe away from the fitting. These leaks are associated with the inherent oxidation and degradation of the pipe caused by the Engel Method of hot cross-linking.



Image 5 – Representative Cracked and leaking Uponor PEX white pipe away from fitting



Image 6 – Cracked and leaking Uponor PEX red pipe away from fitting



Image 7- Representative cracked and leaking Uponor PEX white pipe away from fitting

102.    The leaks in the Class Pipe cause extensive property damage to, among other things, drywall, insulation, paint and flooring. Images 8 through 11, below, are representative examples of resulting property damage from leaks in the Class Pipe.



Image 8- Saturated drywall from Uponor PEX pipe leak



Image 9 —
Water leaking from Uponor PEX pipe through ceiling into garbage can

26



Image 10 - Partially removed water damaged drywall to expose leak from Uponor PEX pipe leak



Image 11- Property damage to drywall and insulation from Uponor PEX pipe leak

**D.   The Regular Failure of the Uponor PEX Pipe Can Only Be Attributed to the Inherent Defect**

**1.   Installation Practices Do Not Cause the Defects**

103.   Uponor certifies and qualifies plumbers to install the Class Pipe. This means that plumbers who install Uponor PEX Pipe are trained and approved of before installing any Uponor PEX system.

104.   On information and belief, even though the plumbers have been certified by Uponor as being qualified and competent to install the Class Pipe tubing and fittings, Uponor has advanced the false narrative of "blame the plumber" or "blame the installation" to deny legitimate consumer complaints against Uponor who have experienced failed pipe with resulting property damage.

105.   There is nothing that the plumber does or can do in the course of installing the Class Pipe tubing that can cause oxidation of the interior or exterior wall of the pipe.

106.   Failures from oxidation degradation are unique and uniform in appearance and cause. Poor installation cannot cause the signature failure modality of cracking in the wall of the pipe away from the fitting or cracking just outside the reinforcement rings.

107.   Similarly, perfect installation will not prevent the defects from manifesting. These defects are solely due to the defective design and manufacturing process.

**2.   Water Temperature and Water Pressure in the System Do Not Cause Leaks in the Class Pipe**

108.   The International Association of Plumbing and Mechanical Officials ("IAPMO") Uniform Plumbing Code ("UPC") requires that all plumbing materials be listed with a third-party certification body before the product can be sold.[1]

109.   Uponor is listed with IAPMO for its Crosslinked Polyethylene Water Distribution System (PEX).

---

[1] *See* 2024 Uniform Plumbing Code 301.2.

110. The IAPMO Research and Testing, Inc. Certificate of Listing provides as follows:

**CHARACTERISTICS:**

Crosslinked polyethylene, plastic, hot and cold water distribution system and/or hydronic radiant heating system made in one standard dimension ration *and intended for a maximum 100 psi water service up to and including a maximum working temperature of 180° F.* Components are comprised of tubing and/or fittings.[2]

111. The Class Pipe used in residential applications is also approved for and used in commercial applications. Commercial hot water PEX systems typically operate at temperatures higher than 140° F for dishwashers and related equipment.

112. All Uponor PEX Pipe contains a print line throughout the length of the pipe which identifies the pipe as Uponor, and among other things, reads "80 PSI 200° F"[3]. This is the long-term pressure rating for the pipe at various temperatures and is far in excess of the typical residential water pressure at 80 PSI or water temperature 120° F.

113. In the highly unlikely event that in residential properties water pressure exceeds 80 PSI or temperature in excess of 120° F, those conditions should not cause the

---

[2] IAPMO RESEARCH AND TESTING, INC. IAMPO R&T PRODUCT LISTING, FILE NO. 3556 ISSUED TO UPONOR, INC. FOR PRODUCT CROSSLINKED POLYETHYLENE WATER DISTRIBUTION SYSTEM (PEX), https://plm.iapmo.org/pld#/certificate/3558/3333 (last visited Nov. 6, 2025) (hereinafter "IAMPO PRODUCT LISTING FOR UPONOR PEX PIPE") (emphasis added).

[3] *Id*.

pipe to fail as the pipe is expressly manufactured and IAPMO listed to tolerate 100 PSI at 180° F.

114. On information and belief, Plaintiffs allege that Uponor has falsely claimed to Putative Class Members or their installers that water temperature and water pressure are the causes of failures in Class Pipe.

115. The markings on the pipe uniformly state the pipe is manufactured to 80 PSI at 200° F.

116. All Uponor PEX Pipe is IAPMO listed to tolerate 100 PSI. This is 20 PSI higher than the standard PSI used at residential properties.

117. All Uponor PEX Pipe is IAPMO listed to tolerate 180° F, a full 60° F higher than the 120° F typically used in residential properties.

118. Uponor PEX piping is specifically approved for hot water recirculation systems including timed, sensor-activated, self-activated or continuous hot-water circulation systems operating at temperatures up to and including 140° F.

119. Uponor represents in its Residential Plumbing Installation Guide that its PEX pipe is designed to tolerate excessive temperature and pressure capability in accordance with American Society for Testing and Materials ("ASTM") F876.[4] This standard requires that Uponor PEX Pipe maintains its integrity for a period of 720 hours (30 days) at 210° F and 150 PSI.

---

[4] https://www.uponor.com/en-us/codes-standards#standards (last visited Nov. 7, 2025)

30

120. Uponor claims that, if installed as directed, Uponor PEX Pipe will withstand these conditions.

121. The water temperature of all residential properties is uniformly set at 120° F or below with rare, if ever, irrelevant exceptions.

**3.  Uponor PEX Pipe is Designed to Bend and Bending the Pipe Does Not Cause It to Crack and Leak**

122. The Uponor PEX Pipe is advertised as flexible and designed to bend for ease of installation. Below is a photograph identified as Image 12 of a new role of Class Pipe in the original Uponor packaging from the manufacturing plant. The photograph demonstrates that the Uponor PEX Pipe is coiled like a garden hose and is designed, distributed and sold in this condition.



Image 12 – Uponor pipe in original packaging from manufacturer

123.    Furthermore, the Class Pipe is designed to facilitate 90° bends. Below is a photograph identified as Image 13 of the Uponor support for a 90° bend.



Image 13 – Uponor support for 90° bend

124. The signature failures leading to cracks and leaks have nothing to do with purportedly overbending the Class Pipe.

**E.    The Uponor PEX Pipe Defect Is Widespread and Has Resulted in Significant Litigation**

125. Uponor has been sued in several states across the United States for the defective Uponor PEX Pipe.

126. On information and belief, Uponor has known for many years that the Class Pipe is defective. Uponor has full knowledge of the defects and of the associated risk of property damage and, nonetheless, continued to sell the Red and Blue Pipe until 2021, and continues to sell the White pipe at this time.

127. On information and belief, Uponor stopped selling the Red and Blue Pipe because it understood its patented flame treatment prior to the application of the coating created a defect which further predisposed the pipe to premature failure. Uponor was aware of this defect long before it ceased selling the Red and Blue Pipe.

128. Uponor's decision to continue selling Uponor PEX Pipe demonstrates its continued and conscious disregard of its long-standing knowledge of the defects and reliable scientific evidence demonstrating the high probability of ongoing pipe failures causing resulting property damage and loss of use to consumers.

129. Uponor has continued to accrue knowledge of the defects, and their serious consequences, over the course of many years. Indeed, Uponor has known about, investigated, and litigated numerous cases to develop full knowledge of the defects, supported by internal investigation and testing both inside the company and with the use

of outside laboratories. These lawsuits and claims have caused Uponor to develop a clear factual foundation to know without question that there are defects in the Class Pipe.

130. On information and belief, despite obvious signs of known defects and associated risks, Uponor concealed claims and scientific findings of Class Pipe defects from consumers, distributors, contractors, installers and building officials.

131. To date, Uponor has taken no serious corrective action to pay for the removal and replacement of the defective pipe or to address these defects or to otherwise notify its distributors, installers, building officials or consumers of the defects and high probability of failure.

132. On information and belief, Uponor has insisted that there be confidentiality provisions in all settlement agreements.

**F.     Uponor Has Full Knowledge about Thousands of Reported Leaks in the Class Pipe**

133. Uponor has for many years been on notice of the Class Pipe defects and the resulting property damage from consumer and installer reports of leaks.

134. On information and belief, thousands of pipe failures have been reported to Uponor by installers and property owners who have informed Uponor of cracked and failed Uponor PEX Pipe with resulting property damage.

135. On information and belief, Uponor monitors these reports of pipe failures.

136. Moreover, in many of these reports of failed pipe, it is expressly clear that Uponor was directly informed of and investigated the leaks in question. While Uponor has had access to the full body of these complaints for many years, it has failed and continues

34

to refuse to warn its property owners or its installers or distributors of the known defects or to reasonably disclose the defects that repeatedly and perniciously manifest in the Class Pipe.

137. The exact time when Uponor became aware of these defects will be established through discovery.

**G.    Despite Its Knowledge, Uponor Misrepresented and Concealed Important Information About the Class Pipe Defect**

138. For all consumers, including Plaintiffs and Class Members, durability, reliability and safety of potable water systems are important factors when buying a home, or selecting pipe when replacing one's potable water supply system.

139. Uponor's knowledge of the defects is based on scientific evidence, generated by Uponor and independent laboratories, as well as experts employed or retained by Uponor, or which Uponor learned of through lawsuits and independent reports of failed pipe and its own investigations.

140. Despite its knowledge of the Class Pipe defects and the impact on reliability, Uponor has concealed the defects and failed to replace the Class Pipe, and has thereby avoided the significant costs, inconveniences, and reputational harms of recalling millions of feet of defective pipe.

141. Uponor has hidden the defects despite its obligation to disclose them, misrepresented the Class Pipe to be reliable and safe, and continued to sell them to contractors and plumbers who installed the defective Class Pipe on behalf of consumers.

142.    Despite full knowledge of the problems with the Class Pipe, Uponor has failed to correct the defects and continues to market the defective products.

143.    If Uponor had instead chosen to disclose the truth about the defects to its developers, contractors and installers, Plaintiffs and Putative Class Members would have been informed about the defects and would not have purchased or had the defective Class Pipe installed in their homes, and/or would not have purchased their homes (and the Class Pipes installed in them) at the prices they did.

    **1.      Uponor Published Design and Plumbing Installation Manuals for the Class Pipe That Detailed the Durability and Safety Features but Did Not Disclose the Oxidation Defect**

144.    Uponor published at least two manuals, with periodic updates: (1) the Uponor Plumbing Design Assistance Manual; and (2) the Uponor Professional Plumbing Installation Guide. The manuals specifically permit the installation of hot water recirculation systems. These manuals are not distributed to members of the public, are technical in nature, and are not intended to be reviewed by consumers, including Plaintiffs and Putative Class Members.

145.    A hot water recirculating system is a plumbing system that circulates hot water to fixtures quickly without waiting for the water to get hot. This is done by installing a recirculating pump in the plumbing lines to create a loop that slowly and constantly circulates the water in the hot water pipes back into the water heater for reheating.

146.    Consumers prefer and enjoy hot water circulation systems because they produce instant hot water at the fixtures.

147. On information and belief, the greatest number of failures of Uponor PEX Pipe are found in pipe used for hot water supply and continuous hot water circulation systems. Yet, these failures are not disclosed to developers, contractors, distributors, installers or the public or potential customers.

148. While Uponor expressly advertises that Uponor PEX Pipe is suitable for use in all hot water continuous recirculation systems not exceeding 140° F, it then states in its design and installation manuals the following:

> Note: Uponor does not promote the use of continuous recirculation due to excessive energy waste.

149. This statement is deliberately deceptive. These manuals uniformly omit any disclosure or warning about the defects in the Uponor PEX Pipe.

150. The hot water temperature in residential properties for continuous recirculation pipe is uniformly 120° F or less, well below the Uponor minimum engineered temperature tolerance level of 140° F.

151. Uponor has no legitimate basis to on the one hand advertise that its pipe is suitable for hot water use up to 140° F, and to simultaneously state that hot water recirculation systems waste energy.

152. Rather than disclose the defects, and that heat from hot water accelerates failures in the pipe, Uponor conceals this fact under the guise of trying to save energy. Uponor fails to disclose its true motivation to cover up the fact that hot water accelerates oxidation and cracking in the Class Pipe because Uponor understood the pipe suffers from

oxidative degradation starting with the initial manufacturing process and then progresses to failure over time.

**2.      Uponor's Advertisements Mislead Consumers regarding the Quality and Efficacy of the Uponor PEX Pipe**

153.    Uponor claims and advertises that Uponor PEX Pipe has a life expectancy of at least 50 years. Uponor also claims that it currently holds the unofficial world record for long-term testing at elevated temperatures and pressure. Uponor further claims that its testing data indicates a life expectancy of well over 100 years.

154.    In reality, the Class Pipe will degrade and leak within a few years after installation.

155.    In promotional and instructional materials, Uponor maintained that its Uponor PEX Pipe is superior to other types of PEX pipe and is durable, reliable, and safe. Uponor has not corrected its representations about the Class Pipe's characteristics in the face of many complaints about failed Uponor PEX Pipe.

156.    Instead, Uponor has repeatedly touted the durability and reliability of the Uponor PEX Pipe and assured all developers, installers, and building officials that they could reply upon the pipe being of high quality. Consumers rely on the knowledge of their builders and installers. Uponor does not distribute its Express Warranty to installers or consumers and, on information and belief, has never informed developers or installers of the defects in its pipe.

157. Uponor has long been aware of these defects and their root causes, but intentionally failed to disclose the defects to consumers, distributors, contractors, installers, or building officials.

158. Uponor is further aware of thousands of failures in the Uponor PEX Pipe that have resulted in widespread leaks and significant resulting property damage.

159. Uponor generally has no direct contact with the purchasers of residential property.

160. Uponor's representations were and are false and misleading because of what it fails to disclose: that the Uponor PEX Pipe has been and remains predisposed to premature failure due to oxidative degradation, and that the defects are progressive in nature and cannot be corrected. Uponor's failure to disclose the defects to developers and installers is misleading and conceals material information, which in turn mislead all Plaintiffs and Putative Class Members.

161. On information and belief, for many years, Uponor has generated its own test results that determined through scientific testing the root cause of the defects in the Class Pipe and fitting installation system.

162. Uponor nonetheless continued to sell the defective Class Pipe knowing that it would have serious consequences to Plaintiffs and Putative Class Members in the form of failed pipe, resulting property damage, and the need to replace their plumbing system.

163. Before manufacturing, advertising, marketing, distributing, and/or selling Uponor PEX Pipe, Defendant failed to take appropriate steps to design and manufacture its product to be free from defects.

164.    To the extent that Defendant made any changes to the design or manufacture of the Class Pipe during the Class Period, those changes did not correct or eliminate the defects in the Class Pipe. The defects remain uniform to all Class Pipe.

165.    Defendant knew or should have known that the Class Pipe as designed and manufactured was not suitable for use in potable water supply systems.

## V.    CLASS ACTION ALLEGATIONS

166.    Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated, as members of the proposed Putative Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis.

### A.    Class Definition

167.    The Putative Class consists of owners of residential property throughout the United States that contain or contained the Uponor PEX Red, White and/or Blue Pipe manufactured and installed from 2010 to the present.

168.    The Uponor PEX Pipe was typically sold by Uponor to plumbing distributors who in turn sold to plumbers or contractors who purchased and installed the Uponor PEX Pipe on behalf of Plaintiffs and the Putative Class.

169.    The information presently available to Plaintiffs shows that Uponor continued to manufacture and sell the defective White Uponor PEX Pipe from 2010

40

through the present and reveal that Uponor discontinued the manufacture and sale of the defective Red and Blue Uponor PEX Pipe from 2010 to 2021.

170. The precise production period for the Red, White and Blue Uponor PEX Pipe is uniquely in the Defendant's hands, as only Uponor possesses the information about the exact date of manufacture of the Uponor PEX Pipe. Uponor has further information that will demonstrate the presence of the defects in the Uponor PEX Pipe and when and how it was designed and manufactured. Plaintiffs and Putative Class Members are unable to obtain precise information on their own from information publicly available.

171. The proposed Putative Class definition is:

All persons and entities that own residential properties in the United States in which Uponor PEX Pipe manufactured after 2010 is or was previously installed.

172. Two proposed Putative Subclasses are identified as follows:

**Oregon Subclass:** All persons and entities that owned residential properties in the State of Oregon in which Uponor PEX Pipe manufactured after 2010 is or was previously installed.

**Washington Subclass:** All persons and entities that owned residential properties in the State of Washington in which Uponor PEX Pipe manufactured after 2010 is or was previously installed.

173. Excluded from the Putative Class are:

a.      Defendant's officers, directors and employees; Defendant's affiliates and affiliates' officers, directors, and employees; Defendant's distributors and distributors' officers, directors, and employees;

b.      All developers of homes in which Uponor PEX Pipe;

c.      All installers of Uponor PEX Pipe; and

41

d.      Judicial officers and their immediate family members and associated court staff assigned to this case.

**B.      The Class is Objectively Measurable**

174.    The names of all distributors of the Uponor PEX Pipe are available through discovery. The names of all plumbers who purchased Uponor PEX Pipe from distributors are available through discovery. The names of Putative Class Members are available through discovery.

175.    There are well-known and Court-accepted notice plans that can identify and inform installers and consumers if they have the defective Uponor PEX Pipe and system.

176.    In addition, the ability of a Putative Class Member to determine whether Class Pipe has been installed in a building is simple, with a very high degree of accuracy with no requirement for destructive testing to the building. The Class Pipe is also date coded and thus, the date of manufacturer can be determined. This ease of determining whether a property has the Class Pipe is based on the following facts:

**1.      All Uponor PEX Pipe is Marked with the Uponor Name.**

177.    The wall of Uponor PEX Pipe is continuously labeled on with clear and easily readable markings. The UPC is adopted by the State of Minnesota with state amendments and is uniformly applicated throughout the State of Minnesota. Section 301.2.1 of the UPC, which has been adopted by the 2020 Minnesota Plumbing Code, requires that the name of the manufacturer be placed on the pipe:

> ***Each length of pipe and each pipe fitting, trap, fixture, material, and device used in a plumbing system shall have cast, stamped, or indelibly marked on it any markings***

42

> ***required by the applicable referenced standards and listing agency, and the manufacturer's mark or name, which shall readily identify the manufacturer to the end user of the product.*** Where required by the approved standard that applies, the product shall be marked with the weight and the quality of the product. Materials and devices used or entering into the construction of plumbing and drainage systems, or parts thereof shall be marked and identified in a manner satisfactory to the Authority Having Jurisdiction. Such marking shall be done by the manufacturer. Field markings shall not be acceptable.

(emphasis added).

178.    The Uponor PEX system is not sold as pipe alone, but as a system which includes the pipe, fittings, and reinforcement rings which are sized and designed to be used only with Uponor PEX Pipe.

179.    When the Class Pipe is installed in a building, all of the pipe, reinforcement rings and fittings will have been manufactured by Uponor.

180.    Uponor's IAPMO Certificate of Listing requires that all the pipe be marked with the manufacturer's name, size of pipe, code number identifying the compound and date of manufacture. The certificate of listing reads, in part, as follows:

IDENTIFICATION:

**2.** ***The tubing shall be marked with the manufacturer's name or trademark, ASTM F877 PEX, nominal size, standard dimension ratio, and a code number identifying the compound and the date of manufacturer.*** **The fittings shall be marked with the manufacturer's name or trademark, pressure rating at 180 F and ASTM F877 or PEX when size permits.[5] Uponor PEX Pipe and Reinforcement Rings Can Be Easily Identified in Attics and in the Area of the Raised Foundation.**

181.    Residences are constructed in two manners, concrete slab on grade and raised foundations. In structures that are slab on grade, the Class Pipe is installed in the attics with drops into the wall cavities for the various plumbing fixtures. By looking into the attic, the Class Pipe is easily identified. If Uponor PEX Pipe is identified in the attic, then the entire PEX system will be Uponor PEX Pipe. This observation requires no repairs or destructive work.

182.    If the building has a raised foundation, then the Uponor PEX Pipe can also be identified in the crawl space. If one section of Class Pipe is identified, then all of the PEX pipe will be Uponor PEX Pipe. This observation requires no destructive work and requires no repairs.

**3.      Uponor Reinforced Rings Are Easily Identified.**

183.    Uponor utilizes an Uponor PEX reinforcement ring at all fitting connections. This reinforcement ring is unique to Uponor and is easily identifiable. These reinforcement rings can also be identified under a sink or toilet. This observation requires no destructive work and requires no repairs.

---

[5] IAMPO PRODUCT LISTING FOR UPONOR PEX PIPE, *supra* note 2 (emphasis added).





184.    If the installer plumbing contractor has used Uponor Pex Pipe they may have

also used Uponor angle stops. These angle stops have been available throughout the

proposed class period and fasten directly to the Class Pipe tubing.



Typical Uponor angle stop installed under a sink with Uponor reinforcement ring



Uponor angle stop (from catalog)

### 4.    Uponor Manifold

185.    A plumbing manifold is a central distribution point for water supply lines, allowing for individual shut-off valves and easy access for maintenance.

186.    If the Uponor system utilizes the Uponor manifold system, then identification of the Uponor system can be easily accomplished because the manifolds are required to be accessible in order to be operated. Typically, an access panel door is opened, and the tubing and stops are readily visible for identification. Also, the manifolds are connected directly to the Uponor PEX Pipe using the Uponor reinforcement rings for the Uponor cold-expansion fitting system.



## C.    Numerosity

187.    The members of the Putative Class are so numerous and geographically dispersed that individual joinder of all Putative Class Members is impracticable. There are thousands of Putative Class Members in the United States. The identities of the Putative Class Members may be ascertained as described above, and further from Defendant's records. Putative Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

## D.    Commonality and Predominance

188.    This action involves common questions of law and fact, which predominate over any questions affecting individual Putative Class Members. These include, without limitation, the following:

        a.      Whether the Class Pipe is defective;

        b.      Whether at the time the Class Pipe left the control of Defendant, the Uponor PEX Pipe was defective in design or manufacture;

47

c.      Whether Defendant failed to warn consumers that the Class Pipe that was manufactured between 2010 and the present is defective;

d.      Whether the Uponor PEX Pipe is subject to premature failure, degradation, and/or deterioration;

e.      Whether Defendant made misleading statements in connection with the advertising/marketing and/or sale of the Class Pipe that was manufactured between 2010 and the present;

f.      Whether Defendant omitted material information when it advertised/marketed and/or sold the Class Pipe that was manufactured between 2010 to the present;

g.      Whether Defendant knew, or should have known, about the defects in its Class Pipe, and, if so, how long it has or should have known about the defects;

h.      Whether Defendant had a duty to disclose the defective nature of the Class Pipe to Plaintiffs and Putative Class Members;

i.      Whether Defendant's concealment of the defects caused Plaintiffs and Putative Class Members to act to their detriment by purchasing the Class Pipe;

j.      Whether Defendant concealed the defects in the Class Pipe;

k.      Whether Defendant's statements, concealments, and omissions regarding the Class Pipe were material, in that a reasonable consumer

48

could consider them important in purchasing, installing and using the Class Pipe;

l.      Whether Defendant's conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

m.     Whether Defendant engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Pipe was defective as designed, manufactured, and sold;

n.      Whether Defendant's concealment of the true defective nature of the Class Pipe caused its market price to incorporate a premium reflecting the assumption by consumers that the Class Pipe was not defective and was fully functional for use in residential properties and, if so, the market value of that premium;

o.      Whether Plaintiffs and the other Putative Class Members are entitled to damages and other monetary or restitutionary relief and, if so, in what amount; and

p.      Whether Plaintiffs and other Putative Class Members are entitled to an order enjoining the Defendant from further deceptive distribution and sales practices with respect to the Class Pipe.

189.   These and other common questions of law and fact predominate over any questions affecting solely individual members of the Putative Class.

49

## E.    Typicality

190.    Plaintiffs' claims are typical of the claims of Putative Class Members whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Putative Class member own a residential property in which the defective Class Pipe was installed, or owned residential property in which failed Uponor PEX Pipe was removed and replaced, and were comparably injured through Defendant's wrongful conduct as described above. Plaintiffs and the other Putative Class Members suffered damages as a direct proximate result of the same wrongful practices by Defendant. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Putative Class Members. Plaintiffs' claims are based upon the same legal theories as the claims of the other Putative Class Members.

## F.    Adequacy

191.    Plaintiffs will fairly and adequately represent and protect the interests of the Putative Class Members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Putative Class Members. Plaintiffs have retained counsel competent and experienced in complex class action litigation and consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Putative Class Members. Therefore, the interests of the Putative Class Members will be fairly and adequately protected.

**G.    Superiority**

192.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Putative Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant such that it would be impracticable for members of the Putative Class to individually seek redress for Defendant's wrongful conduct.

193.    Even if Putative Class Members could afford individual litigation, the court system could recognize the class procedural device as superior to individualized litigation. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**H.    Class Certification is Appropriate Under FRCP 23**

194.    Class certification is also appropriate under Rule 23(b)(1), (b)(2), and/or (c)(4) because:

a.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Uponor;

b.    The prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter,

be dispositive of the interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

c. Uponor has acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

d. The claims of Class Members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

## VI. ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

195. Plaintiffs' claims and all Putative Class Members' claims are brought within the applicable statutes of limitations.

196. Plaintiffs' and Putative Class Members' claims are not barred by any statute of limitation or statute of repose because Defendant actively and fraudulently concealed from the public: (1) the defects in the Class Pipe, (2) Defendant's actions in creating the defects, and (3) the cause of Plaintiffs' and the Putative Class Members' damages and injury in fact.

197. On information and belief, Defendant has known of the defects in the Class Pipe for many years, because Uponor learned, through reports of failed pipe and internal testing, investigation and analysis that the Uponor PEX Pipe was cracking and leaking including through its own books, records, and personnel. Nonetheless, Uponor continued to manufacture and sell the defective Class Pipe. Uponor obtained further knowledge of the risks of the Class Pipe defects from numerous consumer lawsuits, and consumers and

52

installer claims relating to cracked and leaking Class Pipe, occurring in many locations throughout the United States, which provided additional and confirmatory notice to Uponor of the Class Pipe defects.

198.  Discovery relating to all nationwide reports of leaks made to Uponor are relevant to this Putative Class as those reports are relevant to when Uponor was on notice of the defects and what Uponor knew, and Plaintiffs request such discovery.

199.  Uponor had a duty to disclose the Class Pipe defects to consumers. Instead, Uponor knowingly, affirmatively, and actively concealed the defects from consumers by continuing to manufacture, distribute and sell the Class Pipe to installers who then sold Plaintiffs and the Putative Class Members; to advertise the efficacy of the Class Pipe; and to fail to notify Plaintiffs and the Putative Class Members about the true nature of the defective Class Pipe.

200.  As of the date of this Complaint, Uponor still has not disclosed, and continues to conceal, that the Class Pipe is defective, and that the Class Pipe will continue to prematurely fail in the future. Despite its knowledge of the Class Pipe defects and its attendant risks, Uponor continues to market the Class Pipe based on alleged superior quality and reliability while omitting the disclosure of the defects and reliability risks associated with the Class Pipe defect.

201.  Defendant affirmatively concealed the injuries to Plaintiffs and other Putative Class Members by concealing that the Class Pipe has defects that cause leaks and/or by failing to disclose material facts regarding the defects when Defendant had a duty to disclose such information to the Putative Class Members who would be reasonably

53

expected to have plumbing installed in their homes or structures and/or to builders and plumbers who were reasonably expected to use such Class Pipe, based on (1) Defendant's superior and sole knowledge related to the defects, and (2) Defendant's continuous statements to the public, builders, building officials and plumbers about the quality of Class Pipe as set forth herein.

202. Between 2010 and the present, Defendant made public statements and publicly maintained that the Class Pipe was the highest quality PEX pipe available, that its cross chemical bonding process gave it superior characteristics, that Class Pipe has superior resistance to stress-crack corrosion and that Class Pipe will suffer no micro-cracking during expansion, and that consumers should trust Defendant to provide the highest quality Uponor PEX Pipe because the company has many years of industry experience and is an industry leader in the manufacture of Uponor PEX Pipe. These statements to the public were affirmative acts of concealment of the defects in the Class Pipe, of which Defendant was aware.

203. On information and belief, Defendant knew that the Class Pipe was defective and caused leaks and damages for many years. Defendant knew that property owners were being injured by the defects in Class Pipe not long after Defendant started manufacturing the Class Pipe. Defendant knew that it was the wrongdoer who created the defects in Class Pipe.

204. Defendant engaged in a scheme to cover up evidence of premature deterioration and failure of Class Pipe by occasionally providing reimbursement for spot

repairs of the Class Pipe when leaks were reported and not notifying all potentially affected persons of such deterioration and progressive failure modalities of Class Pipe.

205. Between 2010 and the present, Defendant did not notify the public of defects in the Class Pipe but affirmatively conducted a plan to conceal claims of property owners. Defendant conducted a plan to continue making public statements about the Class Pipe being of highest quality, and to occasionally provide reimbursement for repairs of faulty and failed Class Pipe on a case-by-case basis when a failure was reported instead of notifying potential owners, builders, and plumbers of the defects in the Class Pipe.

206. Defendant's actions and statements concealed the fact of the defects in the Class Pipe and were intended by Defendant to exclude suspicion and prevent inquiry regarding defects in the Class Pipe.

207. Plaintiffs and the Putative Class Members had no way to know of the defects in the Class Pipe because the Uponor PEX Pipe and its defects are latent and the leaks manifest behind the walls and ceilings of Plaintiffs' and Putative Class Members' homes and other properties.

208. Plaintiffs and members of the proposed Putative Class could not have discovered through the exercise of reasonable diligence that Uponor was concealing the Class Pipe defects and misrepresenting the defective nature of the Class Pipe.

209. With respect to Class Pipe that has not yet experienced cracks and leaks Putative Class Members did not discover, could not reasonably have discovered, and had no reason to suspect that their Class Pipe is defective.

210. The continued use of the Class Pipe is compromised by these defects such that the Class Pipe is likely to prematurely fail and cause property damage, and that, as a result of the foregoing, they overpaid for their pipe, or the value of their pipe is diminished.

211. With respect to Class Pipe that has experienced cracks and leaks prior to the filing of this Complaint, Putative Class Members did not discover and could not reasonably have discovered that such failure was due to defects known to Uponor.

212. Plaintiffs and other Putative Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Uponor did not report this material information within their knowledge to consumers, installers, or relevant authorities; nor would a reasonable and diligent investigation have disclosed that Uponor was aware of the defective nature of the Class Pipe.

213. Due to the highly technical nature of the Class Pipe defect, Plaintiffs and Putative Class Members were unable to independently discover it using reasonable diligence. Absent counsel and retained consultants with relevant expertise, Plaintiffs and Putative Class Members lack the necessary expertise to analyze the design and manufacturing methods of the Class Pipe, and to understand its defective nature.

214. Uponor has not issued a recall or issued other similar public statements about the Class Pipe defects, and Plaintiffs first learned of the defective nature of the Class Pipe defect, and of Uponor's scheme to design and sell defective Class Pipe, only after they had multiple failures and then in connection with retaining counsel and filing this lawsuit.

215. For the foregoing reasons, Uponor is estopped from relying on any statutes of limitation or repose as a defense in this action. All applicable statutes of limitation and

56

repose have been tolled by operation of the discovery rule and by Uponor's intentional concealment with respect to all claims against Uponor.

## VII.  CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### (Or. Rev. Stat. § 646.605, *et seq.*)

216.    Plaintiffs Fitzpatrick re-allege and incorporate by reference all paragraphs as though full set forth herein.

217.    Plaintiffs Fitzpatrick bring this claim against Defendant on behalf of themselves and the Oregon Subclass.

218.    Under the Oregon Unlawful Trade Practices Act ("OUTPA"), it is unlawful for a person, in the course of business, *inter alia*, to represent that goods have characteristics, uses, benefits, or other qualities that they do not have; represent that goods are of a particular standard or quality if they are of another; advertise goods with an intent not provide those goods as advertised; or engage in any other unfair or deceptive conduct in trade or commerce. Or. Rev. Stat. § 646.608(1).

219.    Defendant, Plaintiffs Fitzpatrick and the members of the Oregon Subclass are "persons" under Or. Rev. Stat. § 646.605(4).

220.    Class Pipe are "goods" primarily used for personal, family, or household purposes under Or. Rev. Stat. § 646.605(6).

221.    Defendant's sale of Class Pipe constitutes "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

57

222. In the course of its business, Defendant violated the OUTPA by knowingly misrepresenting the true quality of the Class Pipe. Defendant engaged in unfair or deceptive acts or practices by representing that the Class Pipe had characteristics, uses, or benefits that it did not have; by representing that the Class Pipe was of a particular standard or quality when it was not; and by advertising the Class Pipe with intent not to sell as advertised.

223. Specifically, by misrepresenting the Class Pipe as reliable and/or free from defects, and by failing to disclose and actively concealing the risk of premature failure posed by the Class Pipe, Defendant engaged in one or more unfair or deceptive practices as defined in Or. Rev. Stat. § 646.608(a).

224. Additionally, in the various channels of information through which Defendant sold and marketed Class Pipe, Defendant failed to disclose material information concerning the Class Pipe, which they had a duty to disclose. Defendant had a duty to disclose the defects because, as detailed above: (a) Defendant knew about the defects in the Class Pipe; (b) Defendant had exclusive knowledge of material facts not known to the general public, Plaintiffs Fitzpatrick and members of the Oregon Subclass; (c) Defendant actively concealed material facts concerning the Class Pipe defects from the general public, Plaintiffs Fitzpatrick and members of the Oregon Subclass; and (d) Defendant made partial representations about the Class Pipe that were misleading because they did not disclose the full truth.

225. Defendant's unlawful acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity

58

to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs Fitzpatrick and members of the Oregon Subclass, about the reliability of Class Pipe, the quality of the Class Pipe, and the true value of the Class Pipe.

226.    Plaintiffs Fitzpatrick and members of the Oregon Subclass have suffered injury in fact and actual damages resulting from Defendant's unlawful trade practices.

225.224.    Plaintiffs Fitzpatrick and members of the Oregon Subclass who purchased the Class Pipe would not have done so if the true nature of the Class Pipe had been disclosed, or would have paid significantly less for it, which shows that Plaintiffs Fitzpatrick and members of the Oregon Subclass actually relied on Defendant's misrepresentations and omissions. Further, Plaintiffs Fitzpatrick and members of the Oregon Subclass bore the cost of the Class Pipe's defect, which included the various costs associated with remediating water damage caused by leaks and repiping their homes.

227.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs Fitzpatrick and members of the Oregon Subclass seek an order enjoining Defendant's unlawful acts or practices, awarding actual damages, attorneys' fees, costs, and any other just and proper relief available under the OUTPA.

## COUNT II
### Violation of the Washington Consumer Protection Act
### (Rev. Code Wash. § 19.86.010, *et seq.*)

228.    Plaintiff McKenzie re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

229. Plaintiff McKenzie brings this claim against Defendant on behalf of himself and the Washington Subclass.

230. Under the Washington Consumer Protection Act ("WCPA") "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Rev. Code Wash. § 19.86.020.

231. Defendant, Plaintiff McKenzie, and the members of the Washington Subclass are "persons" under Rev. Code Wash. § 19.86.010(1).

232. Defendant engaged in "trade" or "commerce" under Rev. Code Wash. § 19.86.010(2) during the Class Period.

233. Defendant has engaged in unfair or deceptive acts or practices that violated the WCPA as described above and below by, at a minimum, representing that the Class Pipe had characteristics, ingredients, uses, or benefits that it did not have; by representing that the Class Pipe was of a particular standard, quality, or grade when it was not; and by advertising the Class Pipe with intent not to sell as advertised.

234. Specifically, by misrepresenting the Class Pipe as reliable and/or free from defects, and by failing to disclose and actively concealing the risk of premature failure posed by the Class Pipe, Defendant engaged in one or more unfair or deceptive practices prohibited under the WCPA.

235. Defendant's action as set forth above occurred in the conduct of trade or commerce.

236. Additionally, in the various channels of information through which Defendant sold and marketed Class Pipe, Defendant failed to disclose material information

concerning the Class Pipe, which they had a duty to disclose. Defendant had a duty to disclose the defects because, as detailed above: (a) Defendant knew about the defects in the Class Pipe; (b) Defendant had exclusive knowledge of material facts not known to the general public, Plaintiff McKenzie and member of the Washington Subclass; (c) Defendant actively concealed material facts concerning the Class Pipe defects from the general public, Plaintiff McKenzie, and members of the Washington Subclass; and (d) Defendant made partial representations about the Class Pipe that were misleading because they did not disclose the full truth.

237.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff McKenzie and members of the Washington Subclass, about the reliability of Class Pipe, the quality of the Class Pipe, and the true value of the Class Pipe.

238.    Plaintiff McKenzie and members of the Washington Subclass have suffered injury in fact and actual damages resulting from Defendant's deceptive trade practices. Plaintiff McKenzie and members of the Washington Subclass who purchased the Class Pipe would not have done so if the true nature of the Class Pipe had been disclosed, or would have paid significantly less for it, which shows that Plaintiff McKenzie and members of the Washington Subclass actually relied on Defendant's misrepresentations and omissions. Further, Plaintiff McKenzie and members of the Washington Subclass bore

the cost of the Class Pipe's defect, which included the various costs associated with remediating water damage caused by leaks and repiping their homes.

239. Plaintiff McKenzie and members of the Washington Subclass did not receive the benefit of their bargain as a result of Defendant's misconduct.

240. Pursuant to Rev. Code Wash. § 19.86.090, Plaintiff McKenzie and members of the Washington Subclass seek an order enjoining Defendant's unfair and deceptive act or practices in addition to actual damages, attorneys' fees, costs, and any other just and proper relief available under the WCPA.

## COUNT III
## Fraud By Concealment

241. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

242. Plaintiffs bring this claim against Defendant on behalf of themselves and the Putative Class under the common law of fraudulent concealment.

243. Defendant is liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550–51 (1977).

244. Defendant intentionally and knowingly concealed and suppressed material facts from consumers regarding the Class Pipe defects causing a serious risk of property damage.

245. A reasonable consumer would not have expected that the Class Pipe contained defects that would cause premature cracking and leaking. Defendant knew that reasonable consumers expected that their Class Pipe would be without defects and would

62

rely on those facts in deciding whether to purchase and install the Class Pipe. Whether a manufacturer's products are reliable and whether that manufacturer stands behind its products are material concerns to a consumer.

246. Defendant ensured that Plaintiffs and the Putative Class did not discover this information by actively concealing and misrepresenting the true nature of the Class Pipe defect. Defendant intended for Plaintiffs and the Putative Class to rely on their omissions— which they did by purchasing homes in which the Uponor PEX Pipe was installed or purchased the Class Pipe through their installers of Class Pipe at the prices they paid.

247. Defendant had a duty to disclose the Class Pipe defects because Uponor had exclusive and far superior knowledge and access to the facts about these hidden and complex defects. Defendant also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Putative Class; Uponor knew the Class Pipe defects and the risks to property damages was a material fact that would affect Plaintiffs' or Putative Class Members' decisions to buy Class Pipe; Uponor is subject to statutory duties to disclose known defects to consumers; Uponor's actions to avoid investigations and a recall due to the defects deprived consumers of an opportunity in which they could have learned about it; and Uponor made incomplete representations about the reliability of the Class Pipe, while purposefully withholding material facts about a known defect. In uniform advertising and materials, Defendant intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Putative Class that the Class Pipe contained defects that would cause premature failure. Because it volunteered to provide information about the Class Pipe that it offered for sale to Plaintiffs and the Putative Class, either through its

developers, contractors, sellers of the property, or installers, Defendant had the duty to disclose the whole truth. It did not.

248.   To this day, Defendant has not made a full and adequate disclosure and continues to conceal material information regarding the Class Pipe defects. The omitted and concealed facts were material because a reasonable person would find them important in purchasing Class Pipe and because they directly impact the value and reliability of the Class Pipe purchased and/or installed by Plaintiffs and the Putative Class.

249.   Defendant actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their Class Pipe, to protect profits, and to avoid costly recalls that would hurt the Uponor brand's image and reduce profits. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Putative Class Members' rights and well-being; and to enrich themselves. It did so at the expense of Plaintiffs and the Putative Class. Had they been aware of the defects in the Class Pipe, and Defendant's callous and conscious disregard for safety and risk of property damage, Plaintiffs and the Putative Class would not have purchased the Class Pipe.

250.   Accordingly, Defendant is liable to Plaintiffs and the Putative Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Pipe at the time of purchase and/or the cost of replacing all Class Pipe in their property.

**COUNT IV**
**Unjust Enrichment**

251. Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

252. Plaintiffs bring this claim in the alternative on behalf of themselves and the Putative Class against the Defendant.

253. Pleading in the alternative, Uponor has been unjustly enriched in that Uponor received the purchase price of the Class Pipe, a benefit which Defendant retained at Plaintiffs' and the Class Members' expense.

254. Plaintiffs Fitzpatrick purchased their home in 2014. A portion of the purchase price was attributable to the purchase and installation of the Uponor PEX Pipe in Plaintiffs Fitzpatrick's home. The precise amount is unknown at this time.

255. Plaintiff McKenzie completed a full remodel of his home in 2019. A portion of the remodel price was attributable to the purchase and installation of the Uponor PEX Pipe in Plaintiff McKenzie's home. The precise amount is unknown at this time.

256. Uponor did not sell its Class Pipe directly to residential end users.

257. All Class Pipe was sold by Uponor through approved distributors. Plaintiffs Fitzpatrick's only contact in the transaction to acquire the Class Pipe was through the purchase of his home from Cascade. Plaintiff McKenzie's only contact in the transaction to acquire the Class Pipe was through the contractor who completed the full remodel of his home.

258. Plaintiffs Fitzpatrick's money to purchase their home was paid to Cascade, who paid the installer of the Uponor PEX piping system. On information and belief, the installer then paid a distributor for the Uponor system and the distributor paid Uponor.

259.    In this fashion, the benefit of Plaintiffs Fitzpatrick's money, namely the purchase price of the Class Pipe, was conferred on Uponor, and retained by Uponor, through the above-described distribution channels for Plaintiffs Fitzpatrick's Class Pipe.

260.    Plaintiff McKenzie's money to purchase the Class Pipe was paid to the contractor, who paid the installer of the Uponor PEX piping system. On information and belief, the installer then paid a distributor for the Uponor system and the distributor paid Uponor.

261.    In this fashion, the benefit of Plaintiff McKenzie's money, namely the purchase price of the Class Pipe, was conferred on Uponor, and retained by Uponor, through the above-described distribution channels for Plaintiff McKenzie's Class Pipe.

262.    All of the Class Pipe was sold to consumers or end-users in some variation of the above system, namely consumer pays the developer, contractor or installer to buy the Class Pipe, who buys the Class Pipe from the distributor, who pays Uponor. This Complaint will be amended if the evidence shows that Defendant Uponor, Inc. passes some or all of the profit either to Uponor North America, Inc., or Uponor Corporation or both.

263.    The benefit that Plaintiffs and the Class Members conferred on Uponor and that Uponor retained at Plaintiffs' and the Class Members' expense was the purchase price of Class Pipe. The chain of distribution of Plaintiffs' and the Clas Members' Class Pipe and the monetary compensation for the Class Pipe followed a pattern that is typical to all sales of Class Pipe.

264.    Thus, Uponor was paid with Plaintiffs' and the Class Members' money indirectly through its distributor. The benefit of the purchase price was conferred on

66

Uponor, or other Uponor entities and retained at Plaintiffs' and the Class Members' expense.

265.    As between Plaintiffs and Uponor, it is unjust for Uponor to retain the benefit conferred upon it by Plaintiffs and the Class Members for the purchase of the Class Pipe based upon the reasonable belief that the Class Pipe would be free from defects and would safely supply water to their residence, none of which were delivered or fulfilled by Uponor.

## COUNT V
## Negligence

266.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

267.    Plaintiffs bring this claim on behalf of themselves and the Putative Class against the Defendant.

268.    Defendant owed Plaintiffs and the Putative Class Members a duty to exercise reasonable and ordinary care in the testing, design, manufacture, distribution, advertising/marketing, and sale of the Uponor PEX Pipe.

269.    Defendant negligently, carelessly, tortiously, and/or wrongfully failed to use reasonable care in the testing, design, manufacture, distribution, advertising/marketing, and sale of the Uponor PEX Pipe in the homes and other structures owned by Plaintiffs and Putative Class Members.

270.    Defendant knew or should have known that owners of homes and other structures with Uponor PEX Pipe, including Plaintiffs' and Putative Class Members', would be substantially damaged thereby, as alleged herein.

67

271. The use of Uponor PEX Pipe has resulted in or will result in foreseeable property damage as alleged herein which includes costs to repair the homes and other structures owned by Plaintiffs and the Putative Class caused by the defective Class Pipe, and the cost to remove and replace the defective Uponor PEX Pipe.

272. Defendant was under a duty to exercise ordinary care to avoid reasonably foreseeable injury to purchasers of Uponor PEX Pipe and purchasers of homes and other structures, and knew or should have foreseen with reasonable certainty that purchasers and/or end users would suffer the damages set forth herein if Defendant failed to perform its duty to cause the Uponor PEX Pipe to be tested, designed, manufactured, distributed, advertised/marketed, and sold in a non- defective manner.

273. Defendant failed and neglected to properly test, design, manufacture, distribute, advertise/market, and sell Uponor PEX Pipe in that Defendant so negligently, carelessly and in an unworkmanlike manner performed the aforesaid work such that Uponor PEX Pipe was tested, designed, manufactured, distributed, advertised, marketed, or sold improperly, negligently, carelessly, or in a defective and unworkmanlike manner.

274. Plaintiffs and the Putative Class Members are lay people and lack the knowledge, understanding, and ability to understand whether the lines and components of the plumbing systems have any defects. Plaintiffs and the Putative Class Members lack any reasonable ability to test the Uponor PEX Pipe to know whether a defect exists.

275. Defendant's negligence is a substantial factor in causing the damages alleged herein.

276.   As a direct and proximate result of the conduct described herein, Plaintiffs and the Putative Class Members have suffered damages, including damages to property other than the Uponor PEX Pipe, in an amount precisely unknown, and according to proof at trial.

277.   As a direct and proximate result of Defendant's negligence, carelessness, and breaches of its duty of reasonable and ordinary care, Plaintiffs and the Putative Class have been caused to suffer losses and damages, including damage to their homes due to leakage from the defective Uponor PEX Pipe and the cost of removal and replacement of the defective Uponor PEX Pipe and other incidental and consequential expenses associated with the failure of Uponor PEX Pipe, all of which damages were foreseeable by Defendant.

## COUNT VI
### Strict Product Liability

278.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

279.   Plaintiffs bring this claim on behalf of themselves and the Putative Class against the Defendant.

280.   At all times material to this action, Defendant was engaged in the process of designing, engineering, developing, testing, approving, manufacturing, fabricating, equipping, inspecting, repairing, labeling, advertising, promoting, marketing, distributing, selling, and supplying Uponor PEX Pipe.

281.   At the time the Uponor PEX Pipe left the control of Defendant, it was defective in design and manufacture and unreasonably defective and dangerous to Plaintiffs

and the other members of the Putative Class who might reasonably be expected to use it in the plumbing systems in their homes and other structures. These defects include, but are not limited to, the conditions described hereinabove.

282. The Uponor PEX Pipe was expected by Defendant to reach, and did reach, property owners/end users without substantial change in the condition in which it was placed on the market and was expected to be installed in the homes and other structures of Plaintiffs and other members of the Putative Class.

283. Defendant, as the designer and manufacturer of Uponor PEX Pipe, is held to the level of knowledge of an expert in the field of the design and manufacture of Uponor PEX Pipe including any cracking, microcracking, oxidative degradation, deterioration, weakening, failure or leaks caused by a furnace or flame treatment,  the application of coatings and adhesives to the Uponor PEX Pipe, and failure of the fitting installation design system.

284. Plaintiffs and the other members of the Putative Class were persons who would be expected to use Uponor PEX Pipe in the potable water system in their homes and other structures.

285. The defects in the Uponor PEX Pipe used in the homes and other structures of Plaintiffs and Putative Class Members were a direct and proximate cause of the damages alleged herein sustained by Plaintiffs and Putative Class Members.

286. Defendant is strictly liable to Plaintiffs and the Putative Class for the damages alleged herein caused by the defects and inadequacies in the design, manufacture and sale of Uponor PEX Pipe.

70

## VIII.  PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request for the Court to enter judgment against the Defendant, as follows:

A.  An order certifying the proposed Putative Class, designating Plaintiffs as the named representatives of the Putative Class, designating Class Counsel, and making such further orders for the protection of Putative Class Members as the Court deems appropriate, under Fed. R. Civ. P. 23;

B.  An award to Plaintiffs and Putative Class Members of costs, restitution, compensatory and other damages under applicable law; and disgorgement, in an amount to be determined at trial;

C.  An order enjoining the Defendant to desist from further deceptive distribution and sales practices with respect to the Class Pipe and such other injunctive relief that the Court deems just and proper;

D.  A declaration that Defendant is financially responsible for all Putative Class notice and the administration of Putative Class relief;

E.  An award all costs of suit, costs of notice, forensic investigation and analysis costs, and fees of experts, including engineering, design, formulation, PEX, testing, and construction experts;

F.  Any applicable statutory and civil penalties;

G.  An award of costs and attorneys' fees, as allowed by law;

H.  An order requiring Defendant to pay both pre-judgement and post-judgment interest on any amounts awarded.

71

I.      Leave to amend this Complaint to conform to the evidence produced during

discovery or at trial; and

J.      Such other or further relief as the Court may deem appropriate, just, and

equitable under the circumstances.

## IX.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury

of any and all issues in this action triable by a jury.

Dated: November 7, 2025                    Respectfully submitted,

                                           s/Catherine Sung-Yun K. Smith
                                           Daniel E. Gustafson (#202241)
                                           Catherine Sung-Yun K. Smith (#0353723)
                                           Bailey Twyman-Metzger (#0400179)
                                           **GUSTAFSON GLUEK PLLC**
                                           Canadian Pacific Plaza
                                           120 South 6th Street, Suite 2600
                                           Minneapolis, MN 55402
                                           Telephone: (612) 333-8844
                                           dgustafson@gustafsongluek.com
                                           csmith@gustafsongluek.com
                                           btwymanmetzger@gustafsongluek.com

                                           *Attorneys for Plaintiffs*

72